```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
ANTHONY ALIOTO,                                              **MEMORANDUM & ORDER**
                    Plaintiff,                               16-CV-1092 (DRH)(AKT)
        -against-

LONG ISLAND RAILROAD COMPANY,

                    Defendant.
----------------------------------------------------------X
```

**APPEARANCES:**

**For Plaintiffs:**
Flynn & Lauriello
5 Penn Plaza, 23rd Floor
New York, New York 10001
By:     Valerie J. Lauriello, Esq.

**For Defendants:**
Landman Corsi Ballaine & Ford, P.C.
120 Broadway, 27th Floor
New York, New York 10271
By:     James T. Doughtery, Esq.
        James M. Woolsey, III, Esq.


**HURLEY, Senior District Judge:**

Plaintiff Anthony Alioto ("Plaintiff" or "Alioto") commenced this action against defendant Long Island Railroad ("Defendant" or "LIRR") pursuant to the provisions of the Federal Employers' Liability Act, 45 U.S.C. §§ 51 et seq., alleging that he was injured during the course of his employment by Defendant. Presently before the Court is Defendant's motion for summary judgment. For the reasons set forth below, the motion is denied.

# BACKGROUND

The following facts are taken from the parties' Rule 56.1 Statements (unless otherwise noted) and are undisputed unless otherwise noted.

Plaintiff is employed as a flag conductor by LIRR. On August 15, 2014, Plaintiff was working near the Ocean Avenue grade crossing in Ronkonkoma, New York, supporting construction workers who were installing fencing adjacent to the track. He was the easternmost flag conductor, responsible for watching for westbound train traffic. Sometime between approximately 8:15 and 8:30 a.m., Plaintiff began walking westward from his original position along the north side of the track. He walked slowly at first along the flat "ballast" on the north side of the railroad ties, looking down where he was stepping. Ballast consists of irregular loose stones, which form part of the support structure for the tracks. Plaintiff admits that ballast "can give somewhat when you are walking on it."[1] The ballast on which Plaintiff was walking was "flattened" and was essentially level with the top of the ties. Although he could have walked on the railroad ties rather than the ballast, Plaintiff contend that walking on ties is discouraged by LIRR except in emergency matters such as flagging a train to stop. The reason it is discouraged, according to Plaintiff, is that the ties are wood and ooze creosote and oils, making them slippery. (Pl.'s 56.1 Resp. at ¶¶ 1-10.)

As Plaintiff was walking west, "all of a sudden, [his] foot went into the ground. It turned into the - turned into the ground like - like a cork screw and [he] fell on to [his] left elbow. . . . [He] was looking as [he] was walking along the ballast, and as [his] foot went down, [he] took another step, and then, when [he] took [his] right step - it - the ballast gave way and it turned in,

---

[1] According to LIRR, ballast can "move" and "give" under foot when walking on it.

and then, [he] fell and landed on [his] left elbow." Immediately before the accident, Plaintiff observed the ballast and it looked "normal," "undisturbed", "fine." He was looking down at the ballast at the time he took the steps that resulted in his fall and did not have any issues with the condition of the ballast. He did not see anything out of the ordinary or observe any problems prior to the accident. When he stepped on the ballast, his foot depressed into the ballast "about a good foot." In the depression, he saw "two rusted tie clips and two or three rusted lag bolts [("debris")] in there."[2] (Pl.'s 56.1 Resp. at ¶¶ 5, 11-15.)

Plaintiff contends that the debris caused the ballast to shift. At his deposition, Plaintiff testified as follows:

> Q. What is the basis of your claim that the presence of debris, as you have described it, somehow contributed to or caused the ballast to shift?
> A. Being that the items that were in there, the lag bolts and the clips, created, possibly created a pocket underneath it and when I stepped on it, it caved in.
> Q. You said, "possibly," do you know whether there was a pocket there or not?
> A. I don't know.
> Q. When you looked down, it just looked like regular ballast?
> A. Yes.
> Q. Otherwise you would not have stepped on it, right?
> A. Correct.
> . . .
> Q. Do you have any personal knowledge, as to whether or not the presence of those lag bolts or clips affected the integrity of the ballast, one way or the other, based upon what you personally saw?
> A. Yes.
> Q. Why, what is the basis of you saying that?
> A. Because those clips have, like an angle to them and when they are laying on the ground, they can create an unstable ground area.
>
> Q. They could, but my question is this, with regard to the circumstances involved in your accident, would you not agree with me because you couldn't see what position the clips of the lag bolts were in, because they

---

[2] Apparently, tie clips are large fasteners used to secure the track to the track plate and lag bolts are large screw for screwing the track plate to the wood ties.

were underneath the ballast, you don't know what angle they were in, you don't
know whether they were face up, face down, sideways, all you saw them was
after the accident happened?
    A.    Right.
    Q.    There is no way of knowing, one way or the other, from your
vantage point, looking at it down at the ballast what position they were in or how
they changed position or how that may have affected how the ballast moved?
    A.    Okay.
    Q.    Isn't that right?
    A.    Okay.
    Q.    You would agree about me, correct?
    A    Yes.
    Q.    You're not an expert, in terms of ballast maintenance or support or
track structure or anything of that nature?
    A.    Correct.

(Alioto Dep. at 217-220.) He further testified, however, that track clips and lag bolts (as well as other foreign materials) are not supposed to be left in the ballast, and that personnel working in an area are responsible for removing and disposing of any debris, including any old track clips and lag bolts. (Alioto Dep. at 224-25; Alioto Aff. at ¶¶ 10-11.)

Although photographs of the general area of the accident were taken, the person who took the photographs did not know the specific location of the accident and did not take "close-up pictures." When reviewing photographs of the area, Plaintiff could not identify any lag bolts or tie clips in the area where he fell and admitted that on the day of his accident he did not observe any other tie clips or lag bolts in the area around where he had his accident, other than the ones which were affixed to the track structure. (Alioto Dep. at 163.) . He asserts this is because they were under the ballast. He contends that there were track clips and lag bolts in the ballast walkway along the right of way, west of the North Ocean Avenue crossing, as early as May 2014, referencing pictures taken in May 2014 and depicting the vicinity of his accident. (Pl.'s 56.1 Resp. at ¶¶25-26, 31-34; Pl. Ex. 1.) He also references pictures taken in July 2014, one month prior to the accident, which show that the ballast was reconfigured.

Shortly after the accident, LIRR Transportation Manager Debra Huber appeared at the site, interviewed Plaintiff and prepared a statement that he signed. The written statement does not mention "debris" or lag bolts or track clips specifically but Plaintiff claims he told her about the debris. Huber also took the statement of the only witness to the accident, Edward Smith. According to that statement, Smith "was at the Sycamore Avenue entrance near LIRR tracks looking east saw Mr. Alioto walking west he spinned out [sic] and fell to the ground."

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment, pursuant to Rule 56, is appropriate only where the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The relevant governing law in each case determines which facts are material; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When making this determination, a court must view all facts "in the light most favorable" to the non-movant, *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014), and "resolve all ambiguities and draw all permissible factual inferences in favor of the [non-movant]," *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)). Thus, "[s]ummary judgment is appropriate [only] where the record taken as a whole could not lead a rational trier of fact to find for the [non-movant]." *Id*. (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)) (internal quotation marks omitted).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts

demonstrating that there is a genuine dispute of material fact to be tried. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). The non-movant must present more than a "scintilla of evidence," *Fabrikant v. French*, 691 F.3d 193, 205 (2d Cir. 2012) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quoting *Matsushita*, 475 U.S. at 586-87), and "may not rely on conclusory allegations or unsubstantiated speculation," *Id*. (quoting *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010).

The district court considering a summary judgment motion must also be "mindful . . . of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because the "evidentiary burdens that the respective parties will bear at trial guide district courts in their determination[s] of summary judgment motions," *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). "[W]here the [non-movant] will bear the burden of proof on an issue at trial, the moving party may satisfy its burden by pointing to an absence of evidence to support an essential element of the [non-movant's] case." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014) (quoting *Brady*, 863 F.2d at 210-11) (internal quotation marks omitted). Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish his claim, the burden shifts to the non-movant to offer "persuasive evidence that his claim is not 'implausible.' " *Brady*, 863 F.2d at 211 (citing *Matsushita*, 475 U.S. at 587). "[A] complete failure of proof concerning an essential element of the [non-movant's] case necessarily renders all other facts immaterial." *Crawford*, 758 F.3d at 486 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## II. Liability under FELA

The FELA provides "damages to any person suffering injury while he is employed by [a common carrier by railroad engaged in interstate commerce] . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier." 45 U.S.C. § 51.

> To establish a claim under FELA, the plaintiff must prove the traditional common law elements of negligence: duty, breach, foreseeability, and causation. *See Sinclair v. Long Island R.R.*, 985 F.2d 74, 77 (2d Cir.1993). "At the same time, the plaintiff's burden in making a showing of causation and negligence is lighter under FELA than it would be at the common law because 'the theory of FELA is that where the employer's conduct falls short of the high standard required of him by [FELA,] and his fault, in whole or in part, causes injury, liability ensues.'" *Tufariello v. Long Island R.R. Co.*, 458 F.3d 80, 86 (2d Cir.2006) (quoting *Kernan v. Am. Dredging Co.,* 355 U.S. 426, 438–39 (1958)). Thus, "[t]he test is whether 'the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury.'" *Ulfik v. Metro– North Commuter R.R.*, 77 F.3d 54, 58 (2d Cir.1996) (quoting *Rogers v. Mo. Pacific R.R. Co.*, 352 U.S. 500, 506 (1957)).

*Mitchell v. Metro-North Commuter R.R.*, 2014 WL 431343 (S.D.N.Y. Feb. 4, 2014). While the FELA is a remedial statute that should be liberally construed it "is not a strict liability statute, and the fact that an employee is injured is not proof of negligence." *Williams v. Long Island R.R.*, 196 F.3d 402. Thus, while a relaxed standard applies as to what constitutes both causation and negligence, *Rogers v. Mo. Pac. R.R. Co.*, 352 U.S. 500, 506 (1957), a claimant "must at least offer *some evidence*" as to each element of negligence. *Sinclair*, 985 F.2d at 77. Expert testimony is generally required to establish causation, "unless the connection is the kind that would be obvious to laymen, such as a broken leg from being struck by an automobile." *Tufariello*, 458 F. 3d at 89 (internal citation and quotation marks omitted).

### III. The Parties' Contentions

Defendant's motion for summary judgment is premised on its argument that Plaintiff's theory of causation is speculative. More particularly, it maintains that the unsupported assertion that the bolts and clips "possibly created a pocket which collapsed" when Plaintiff stepped on it is speculation and that the effect that buried bolts and clips might have on the stability of the structure of the ballast requires expert testimony. (Def.'s Mem. in Supp. at 8-10.)

In response, Plaintiff first notes that his theory of liability is that Defendant:

> 1. Failed to provide [him] with a safe place to stand, walk at work and work.
> 2. Caused and permitted, and allowed the work area to be improperly, inadequately, and insufficiently inspected, built, checked, cleaned and maintained.
> 3. Caused, permitted and allowed the work area to be, become, and remain, unsafe, hazardous, and unfit for its designated purpose.
> 4. Caused, permitted and allowed the work area to be disturbed with railroad construction, demolition, alteration or excavation activities, and then causing, permitting and allowing the work area and/or work area to be covered with ballast with [sic] construction, demolition, alteration or excavation debris beneath the ballast.

(Pl.'s Mem. in Opp. at 1.) He maintains that Defendant attacks only one aspect of his case, i.e. that expert testimony is needed to establish that the debris covered by ballast was an unsafe condition and argues that no expert testimony is needed because there is nothing complex or technical about loose stone moving underfoot with or without a cluster of debris sitting beneath it. (*Id.* at 8-10.)

In reply, Defendant argues that Plaintiff is asking "a lay jury as to the difference, if any, in the stability of the irregularly shaped ballast stone with or without the presence of buried bolts or clips and what effect this may have on [a] pedestrian traversing a surface which is not primarily designed for walking" and "as to what effect a 'reconfiguration' of the ballast might have, despite the fact that a jury would have no knowledge of any of the engineering principles

involved in the construction and maintenance of rail beds." As such, it asserts that Plaintiff's testimony cannot take the place of an expert. (Def.'s Reply at 6-7.)

IV. **There is a Question of Fact as to Causation**

Preliminary, the Court notes that although Plaintiff proffers four theories of liability, in fact each of those theories are premised principally on existence of tie clips and lag bolts in the ballast. (*See* Alioto Dep. at 223-227.) It is the issue of causation limited to the presence of debris, (i.e. tie clips and lag bolts) that defendant addressed in its moving papers and that plaintiff responded to and thus the Court's discussion is limited to that issue.[3]

Emphasizing Plaintiff's use of the word "possibly" in the earlier quoted deposition testimony describing the presence of the bolts and clips as "possibly" creating a "pocket," Defendants characterizes Plaintiff's causation theory as "speculative." That testimony, however, must be read in context of the record as a whole as well as Plaintiff's theories of liability.

Here, as the May 2014 photograph demonstrates, there is clear evidence of the presence of clips and bolts amongst the ballast in the area where the accident occurred. In other words there is evidence that Defendant was aware, or should have been aware, of the presence of debris in the ballast. There is also testimony that, for safety reasons, foreign objects, including lag bolts

---

[3] For purposes of this decision, the Court presumes that the LIRR was negligent in failing to clear "loose" tie clips and lag bolts from ballast. To the extent that Plaintiff argue that the LIRR was negligent in allowing him to walk on ballast (whether or not there was debris in the ballast),. such an argument appears to have little merit. That ballast may "give" when walking on it is only evidence that Plaintiff may have had difficulty in performing the normal functions of his job as a flag conductor – a job that required him to walk on ballast. "Without more, his testimony is not evidence that his job was unreasonably unsafe or that [Defendant] required him to perform that job in an unreasonably unsafe manner." *Lewis v. CSX Transp., Inc.*, 778 F. Supp. 2d 821 (S.D. Ohio 2011) (citing, *inter* alia, *Parson v. CSX Transp., Inc.*, 714 F. Supp. 2d 839, 843-844 (N.D. Ohio 2010) ("noting that a railroad is not under a duty to eliminate all risks and that the plaintiff could not recover simply by showing that walking in the yard on inherently uneven surfaces or climbing on and off equipment – tasks that were merely 'part of the work' – caused her injury; rather the plaintiff needed to how that the conditions she faced were unreasonably unsafe.")). Rather, Plaintiff would have to provide evidence that he encountered unreasonably uneven walking conditions. Such evidence could include, for example, that the ballast was placed without the ground underneath it being properly smoothed out. *See, e.g., Parsons*, 714 F. Supp. 2d at 844.

and clips, were not to be left in the ballast. Finally, there is evidence that in July 2014, the ballast in the areas of the accident was reconfigured. But there is no evidence that the debris seen in the May 2014 photograph was cleared before the reconfiguration or that employees were warned that debris might be mixed into the ballast as the result of the reconfiguration. On the basis of the record presented on this motion, a jury could conclude that, in failing to clear the debris, Defendant improperly maintained the surface on which Plaintiff had to walk (i.e., the ballast ) making it unreasonably unsafe and that is was reasonably foreseeable that improperly maintaining an area that employees are known to walk on could cause a fall.

## V.     Expert Testimony is Not Required

Because Defendant contends that expert testimony is needed to establish causation, the Court begins with a brief discussion of two Second Circuit FELA cases in which expert testimony was found to be unnecessary.

In *Uflik v. Metro-North Commuter R.R.*, 77 F3.d 54 (2d Cir. 1996), a railroad worker was injured in a fall he claimed was caused by dizziness when he inhaled paint fumes in a rail tunnel. In addressing causation, the court began by noting that the chain of causation consisted of three potential links "(1) whether the paint fumes on July 15 caused [plaintiff's] dizziness on July 23, (2) whether [plaintiff's] dizziness on July 23 caused him to fall down the stairs . . ., and (3) whether [his] fall down the stairs caused his current debilitated condition. *Id*. at 59.  Focusing on the disputed link in the causal chain – whether the paint fumes caused on July 15 caused the plaintiff's dizziness eight days later, the  court rejected the defendant's assertion that expert medical testimony was required. The court reasoned that "[i]n this case, the trier of fact could reasonably determine, without expert testimony, that prolonged exposure to paint fumes would cause headache, nausea, and dizziness." *Id*. at 59-60.

Similarly, expert testimony was not required in *Tufariello v. Long Island R.R. Co.*, 458 F.3d 80 (2d Cir. 2000) on the question of whether the plaintiff's exposure to the sound of train horns caused his hearing loss. Finding its decision in *Ulfik* controlling, the *Tufariello* court reasoned:

> Here, as in *Ulfik*, there is a generally understood casual connection between physical phenomena – in this case, very loud sounds, which we refer to colloquially as "deafening" – and the alleged injury that "would be obvious to laymen." And here, as there, "the right of the jury to decide the issue of causation must be most liberally viewed."

458 F.3d at 88 (internal citations and footnote omitted).

Here there is evidence that in May 2014 there was debris, i.e. tie clips and lag bolts, near where the accident occurred. Given that, a jury, using common sense, could find that the defendant's failure to remedy that condition contributed, in even the slightest way, to the plaintiff's fall. Tie clips and bolts are made of a material vastly different from the material (stones) used for ballast. Further, the clips and bolts are shaped very differently from the shape of the stones used for ballast. It does not require an expert to deduce that such foreign objects among the ballast, could affect the compacting of the ballast and hence the reduce the ability to walk on it safely. *Cf. Caserto v. Metro-North R.R.*, 2016 WL 406390 (S.D.N.Y. 2016) (given testimony that employer was aware that employees used cable duct as walkway and that pieces of ballast ended up on the duct, jury using common sense could find that negligence in failing to remedy the condition and failure to warn was a cause of plaintiff's injuries).

The cases cited by Defendant do not require a different result.[4] In *Kennedy v, Adamo*, 323 Fed. App'x 34 (2d Cir. 2009) the court found that summary judgment in favor of the employer

---

[4] Both *Kennedy* and *Wills* involved claims under the Jones Act, which has the same relaxed standard as FELA.

was properly granted as the plaintiffs "failed to present sufficient evidence of causation, apart from speculative assertions that installation of a rearview mirror would have prevented the injuries." In *Wills v. Amerada Hess Corp.*, 379 F.3d 32 (2d Cir. 2004), the claim was that a seaman who served aboard vessels which transported petroleum based fuels contracted squamous cell carcinoma as a result of his harmful exposure to toxic emissions. That claim was properly dismissed on summary judgment, as "a lay juror could not be expected to intuit the causal relationship between the acts in question and the injury." Similarly, in Siegel v. Metro-N. Commuter R. Co., 2009 WL 889985, at *2 (S.D.N.Y. Apr. 1, 2009) the FELA claim was dismissed for failure to prove causation where submitted evidence consisted of publications discussing ergonomics and carpal tunnel syndrome generally but did not relate to the types of tools used by employee or the types of repetitive motions he made. Unlike any of the foregoing cases, a jury in this case could conclude that the presence of debris mixed among the ballast but not visible to the naked eye affected Plaintiff's ability to walk on the ballast safely, causing him to fall and sustain injuries. There is nothing technical requiring the testimony of an expert.

Finally, the Court finds unconvincing Defendant's argument that "ballast is purposefully constructed to provide support and drainage for the track structure – not to accommodate pedestrian traffic – and must comply with regulations found in 49 CFR [§§] 213.103, 213.334. These regulations are intended to provide a safe and stable right of way for trains but impose no requirement that the ballast also provide a safe walkway for pedestrians." An argument similar to this, which is addressed to the issue of negligence, not causation, was rejected by the court in *Tufariello*. *See* 458 F.3d at 91 (rejecting contention that compliance with OSHA regulations regarding sound limits precluded finding railroad was negligent for failing to provide safety gear to protect employee's hearing in the presence of loud noises.)

## CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment is denied.

**SO ORDERED.**

Dated: Central Islip, New York  
      August 24, 2018

          _s/ Denis R. Hurley_  
          Denis R. Hurley  
          United States District Judge